## COMPLAINT INDEX FOR COURT'S CONVENIENCE

Preliminary Statement ......................................................................... 2

Complaint ................................................................................... 3-4

Jurisdiction and Venue ..................................................................... 4

The Parties ................................................................................. 4-5

FOIA Statutory Framework .................................................................. 4-5

Privacy Act ................................................................................ 6-8

Facts Giving Rise to Complaint............................................................8

VA 1991 Rating Decision ................................................................. 8-9

Overview of Violations .................................................................. 9-10

Defendant's Motivation for Violating Acts....................................... 10-11

Dr. Turek's Felony Convictions ........................................................ 11-12

Telephone Call w/ VA FOIA Officer Tony Hoover ............................... 15-17

Communications with VA Regional Counsel...................................... 17-19

Telephone Call with VA Manager/Coach Wilson.............................. 20-21

Plaintiff's Second FOIA Request ...................................................... 22-24

Administrative Exhaustion.............................................................. 24-26

**Count I**, Violation of FOIA, 5 U.S.C. § 552..................................... 27-29

**Count II**, Violation of Privacy Act of 1974, 5 U.S.C. § 552a ............... 29-31

**Count III**, Violation of Privacy Act, 5 U.S.C. § 552a........................... 31-33

Prayer for Relief......................................................................... 33-35



FILED

FEB 1 7 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| JOHN ALBERT MULVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: 2:22cv76 |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF VETERANS AFFAIRS, | ) | |
| | ) | Freedom of Information Act |
| Defendant. | ) | Privacy Act of 1974 |

## COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

It is often better to acknowledge obvious errors and mistakes than defend them. When the Department of Veterans Affairs acknowledges errors and mistakes, it preserves public trust and confidence.  The department can begin to repair damage done by erroneously denying, concealing or losing information from veterans that substantially impacts their claims.  Rather than acknowledge its errors and mistakes, Defendant—through his management team chose to defend the indefensible in an indefensible manner.  At nearly every turn, Defendant and his agents repeatedly violated the department's own ethical rules, regulations, policies, procedures—and now the constitutional provisions under the Freedom of Information Act and Privacy Act of 1974 with impunity.  More shocking, even after defendant knew one of his key physician employees at the Nashville Regional

Office—whose medical license was revoked in 1984 for Fraud, Deceit and Gross Medical Malpractice in Medicine—what did Defendant Department of Veterans Affairs do? For many years Defendant "knowingly and willingly" "retained an acknowledged fraud on their employment rolls until Dr. Turek struck again. This time Dr. Turek was charged by federal authorities and convicted by the Federal District Court of Tennessee for Healthcare Fraud and Money Laundering and served thirty (30) months in prison, two (2) years of supervised release, and paid restitution in the sum of $2,3000,000 to the government. For reasons set forth in the complaint, this matter is critical and significant on a multiplicity of fronts.

## I. COMPLAINT

1.) Plaintiff, John Albert Mulvey, (*hereinafter* "Plaintiff" or "Veteran"), respectfully appearing pro se before this Honorable Court brings this action[1] against the Department of Veterans Affairs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et. seq, and ("Privacy Act of 1974"), 5 U.S.C. § 552a et. seq., compelling prompt disclosure of plaintiff's claim records[2], documents and materials in the custody, control or possession of the Department of Veterans Affairs, components or affiliates since August, 1986.

---

[1] The term "action" is defined as inclu[ding] the whole or part of an agency rule, order license, sanction, relief, or the equivalent or denial thereof, or failure to act. 5 U.S.C. § 551(13); Ayyakkannu Manivannan v. Bochenek, (N.D. W. Va., Feb. 21, 2018).

[2] Record means a document, a portion of a document, and information contained within a document, and can include information derived from a document or a database. Such documents may be maintained in paper, electronic, and other forms . . . or computer hardware. See 38 C.F.R. § 1.551.

3

2.)   Plaintiff incorporates defendant's regulations set forth at 38 C.F.R. §§ 1.550 through 1.562, containing defendant's rules and procedures for processing requests for records under 5 U.S.C. § 552 and 5 U.S.C. § 552a.

3.)   Plaintiff further incorporates defendant's FOIA VA directive 6213, Washington, D.C., dated September 15, 2021, pp.'s 1-9, addressing defendant's FOIA Officer duties and obligations, attached hereto as Plaintiff's **Exhibit A**.

## II.   JURISDICTION AND VENUE

4.)   Upon receipt of plaintiff's complaint, this Court confers proper jurisdiction to enjoin Defendant Department of Veterans Affairs from withholding agency records improperly withheld from plaintiff. 5 U.S.C. § 552(a)(4)(B). Venue is appropriate pursuant to 28 U.S.C.S. § 1391(b) and E.D. Va. Loc. R. 3(C).

## III.   PARTIES

5.)   Plaintiff, John Albert Mulvey, is a citizen and resident in the State of Virginia and resides at 536 West Riverview Drive, Suffolk 23434.

6.)   Plaintiff, a disabled veteran, seeks to enforce his rights and privileges under relevant regulations under Title 38 and Acts herein.  This action is also predicated upon protecting the rights of veterans, informing the public about activities involving government official integrity, situations involving VA claims, and VA management officials breach of the public's confidence and trust[.]

7.)     Defendant Department of Veterans Affairs is a federal executive agency[3] within the executive branch of government and its main headquarters[4] is located at 810 Vermont Avenue, N.W., Washington, D.C. 20420.

8.)     The Honorable Merrick Garland is listed as a defendant in this matter because he is an executive and currently serves as United States Attorney General of the United States Department of Justice ("DOJ"), Washington, D.C., who oversees all DOJ functions and activities, and represents and defends federal government executive departments/agencies and United States in all actions.

## V.  STATUTORY FRAMEWORK

### A.    FOIA, 5 U.S.C. § 552

9.)     The Freedom of Information Act, 5 U.S.C. § 552, requires the general philosophy of federal government agencies to release requested records to the public unless they fall with one of nine exemptions enumerated in the statute.  5 U.S.C. § 552(b)(1)-(9) setting forth nine exemptions; Department of the Air Force v. Rosen, 425 U.S. 352; 96 S. Ct. 1592 (1976).

---

[3]   Pursuant to 5 U.S.C.S. § 105, the Department of Veterans Affairs is an "Executive Agency" meaning an Executive Department. See 5 U.S.C.S. §§ 101 et. seq. 38 U.S.C.S. § 301 denotes the Department of Veterans Affairs is an Executive Department of the United States. "Agency" and "Department" denotes these terms are used interchangeably. See also definitions at 38 C.F.R. § 1.551.

[4]   Denis R. McDonough is the current Secretary of Veterans Affairs, confirmed by the Senate on February 8, 2021, and sworn into office on February 9, 2021. The Secretary is the head of the Department of Veterans Affairs and responsible for delegation of work, duties, policy, procedures, and all matters before the Department.

10.) A federal government agency must respond to a party making a FOIA request within twenty (20) working days—excluding legal holidays and weekends, notifying the party of at least the agency's determination whether or not to fulfill the request, and the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. § 552a(6)(A)(i).

**B.** **Privacy Act, 5 U.S.C. § 552a**

11.) The Privacy Act of 1974 provides district courts confer subject matter jurisdiction over an individual's civil action against any agency whenever an agency (A) makes a determination under 552a(d)(3) not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; (B) refuses to comply with an individual request under 552a(d)(1); (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or 'benefits' to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or (D) fails to comply with any other provision of this section, or any rule thereunder, in such a way as to have an adverse effect on an individual.

12.) The Privacy Act, 5 U.S.C. § 552a(d), grants an individual the right to review, make a copy of his record or obtain a copy of his record or any information

pertaining to information contained in defendant's system. 5 U.S.C. § 552a(d)(1).

13.)   Each agency that maintains a system of records shall make reasonable efforts to assure that such records are accurate, timely and relevant § 552a(e)(6).

14.)   A "system of records" is defined as a group of any records under the control of an agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular to the individual.  5 U.S.C. § 552a(a)(5).

15.)   Generally, the Department of Veterans Affairs uses a veteran's last name and last four digits of his or her Social Security Number to retrieve records in the VA's System of Records maintained by the National and/or Regional offices.

16.)   Title 5 of § 552 a(g)(1) recognizes a civil action for agency misconduct fitting within any of four categories 5 U.S.C. § 552a(g)(1)(A)-(D).  The first two categories cover deficient management of records: § 552a(g)(1)(A) provides for the correction of any inaccurate or otherwise improper material in a record, and § 552a(g)(1)(B) provides a right of access against any agency refusing to allow an individual to inspect a record kept on him.  The two remaining categories involve derelictions having consequences beyond the statutory violations per se.

17.)   Section 552a(g)(1)(C) describes an agency's failure to maintain an adequate record on an individual, when the result is a determination adverse to that

person. Section 552a(g)(1)(D) addresses a violation when a person suffers an adverse effect from any other failure regarding the terms of the Privacy Act.

## VI. FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

18.) Plaintiff's FOIA and Privacy Act request is premised, in part, upon plaintiff's active duty naval military service from October 1978 to October 1982.

19.) During plaintiff's period of service between 1978 to 1982, plaintiff sustained injuries and was also regularly exposed to jet and diesel fuel, loud injurious noises, asbestos, chemicals, toxins, and other airborne pollutants.

20.) On December 27, 1990, plaintiff submitted a claim to the Nashville VARO seeking appropriate benefits under Title 38 of the regulations.

21.) On July 11, 1991, plaintiff submitted a second claim to VARO seeking benefits for injuries incurred while on active duty between 1978 to 1982.

### VA's Rating Decision, September 24, 1991

22.) On September 24, 1991, defendant issued a rating decision denying plaintiff's claims with the exception of one claim rated at zero (0%) percent compensability despite overwhelming evidence to the contrary. The rating decision dated September 24, 1991, was signed by three of defendant's employees:

| NAME | OCCUPATION |
|------|------------|
| a.) R. E. Turek, M. D. | Medical Rating Specialist |
| b.) H. S. Neubert | Rating Specialist |
| c.) J. W. Marrison | Rating Specialist |

8

23.)   Defendant's September 24, 1991 rating decision had, and to date still does, contain substantial errors of law and fact, including but not limited to:

## VII.  OVERVIEW OF VIOLATIONS

a.)   Defendant improperly and erroneously cited a federal statute, 38 C.F.R. § 3.24, in plaintiff's September 24, 1991 rating decision that had no relevance nor was it applicable to plaintiff's claim for benefits or consideration of compensability for such benefits.   Title 38, Section 3.24 involves Improved Pension Rates for Surviving Children.  To date, defendant has officially failed to concede this incontrovertible error of law,

b.)   Defendant improperly and erroneously cited plaintiff's Social Security Security Number on pp.'s 2 and 3 of the September 24, 1991 rating decision.  To date, defendant has failed to officially concede this error.

c.)   Defendant stated in his September 24, 1991 rating decision that plaintiff's last date of examination[5] by the Department of Veterans Affairs, Nashville, Tennessee, occurred on "August 6, 1991."  By cover letter dated January 31, 2022 from defendant to plaintiff, defendant now asserts, "In a conversation with a VA representative, you requested copies of the results of an examination dated August 6, 1991.  Review of your VA filed revealed no such

---

[5]   The September 24, 1991 Rating decision, Box No. 15, shows plaintiff underwent an examination on August 6, 1991.  Defendant's component at the Nashville Regional office confirmed on January 31, 2022, that "review of your VA file revealed no such no such document of record on that date"

document of record from that date.  (<u>See</u> letter from Defendant dated January 31, 2022, attached hereto as Plaintiff's **Exhibit B**).

        d.)    Defendant improperly and erroneously stated in his September 24, 1991 rating decision that plaintiff "reopened" his claim for "fractured jaw and hearing loss on 7-11-91, p. 2, Section D.   Defendant's assertion is inaccurate, misleading and not supported by the documentary evidence of record, and

        e.)    Defendant further improperly and erroneously stated in his September 24, 1991 rating decision that plaintiff filed his claim on 7-10-91. Defendant's assertion is inaccurate, misleading and not supported by the record.

**Raymond E. Turek, M.D.**  *a/k/a*   **R.E. Turek, M.D.**

    24.)    That defendant disclose Dr. Turek's opinions, notes, clinical studies, tests, evaluations, examiner worksheets, amount of time evaluating this claim, and/or any other methodology Dr. Turek used or employed for the official basis of his official determination and conclusions that led to plaintiff's improper and erroneous rating decision evidenced on September 24, 1991, in addition to Nashville VARO's consent of such rating decision dated October 15, 1991.

**Defendant's Motivation for Violating the Acts and Refusing to Respond to Plaintiff's FOIA and Privacy Act Requests and Other Communications**

    25.)    Defendant's motivation, in part, for non-compliance of the Freedom of Information Act and Privacy Act, not-to-mention, ignoring his own regulations

10

set forth in Title 38, is premised upon defendant's substantial inequitable conduct, misrepresentations, voluminous errors, and deceitfulness involving plaintiff's claims, which may plausibly and conceivably affect hundreds, if not thousands, of similarly situated veterans with claims between the time period of 1985 to the early 2000's by defendant's Nashville Department of Veterans Affairs Regional Office.

### Defendant was aware of Dr. Turek's Fraudulent Activities since approximately 1985 to at least 2004

26.)   During the past several months, plaintiff, after continuous review and research of some information still in his custody, discovered that Raymond E. Turek, M.D., Medical Rating Specialist (License No. 6014), an employee of the defendant, as evidenced by official public record, was an acknowledged fraud that should not have been placed in a sensitive position of public trust.  In a telephone conversation with Attorney Kehoe, defendant's counsel in Florida, on January 18, 2022, Ms. Kehoe 'agreed' Dr. Turek's past position with defendant encompassed a position of "public trust" although she did not add anything beyond this statement.

### Tennessee Board of Medical Examiners

27.)   On March 20, 1984, the Tennessee Medical Licensing Board "revoked" Dr. Turek's medical license and he pled guilty to:

- Unprofessional Conduct
- Fraud and Deceit in the Practice of Medicine
- Gross Malpractice

(See TN Department of Health attached hereto as Plaintiff's **Exhibit C**).

11

**Dr. Turek Convicted of Healthcare Fraud and Money Laundering**

28.)   On April 30, 2004, Dr. Raymond E. Turek, Entered a Guilty Plea for violation of 18 U.S.C. § 1347, Health Care Fraud, and 18 U.S.C. § 1957, Money Laundering, in the United States District Court for the Middle District of Tennessee which was subsequently accepted on July 19, 2004.

29.)   On July 19, 2004, the United States District Court for the Middle District of Tennessee sentenced Dr. Turek to thirty (30) months to the custody of the United States Bureau of Prisons, two (2) years of supervised release and restitution to the government for assessment of Two Million Three Hundred Thousand Dollars ($2,300,000).  (See Consent Order attached hereto as Plaintiff's **Exhibit D**).   (Also, See Case No. 3:04-cr-00028, Document No. 30, Filed 08/05/05, Page 1 of 2 attached hereto as **Exhibit E).**

**Plaintiff's Conciliatory Efforts and Diligence**

30.)   By email dated Friday, December 10, 2021, plaintiff kindly emailed Travis Kraft, VA Assistant Director and Angela Odom, VA Assistant Director at Nashville VARO to obtain information pertaining to VARO's receipt of plaintiff's original claim and service records from component agencies.  To date, the only information plaintiff received regarding this request was a subsequent oral denial by virtue of Nashville VARO's FOIA Officer, Tony Hoover—that he would refer the request to the OPM.  The remarkable part about defendant's conduct is if he

and his agents employed reasonable time to actually review ("read") plaintiff's request, then defendant would have reasonably concluded the information being sought was not precluded by the Freedom of Information Act, Privacy Act of 1974, and the VA's own directives and policies for releasing and disclosing information. (See plaintiff's request to VARO on 12/10/21 at 9:03 a.m. (est) attached hereto as **Plaintiff's Exhibit F**).

      31.)  By email dated December 17, 2021, plaintiff contacted VARO Director Charles L. Moore, Jr. to follow up on the communication plaintiff transmitted to Mr. Kraft and Ms. Odom on December 10, 2021, and to serve VARO with a request pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552a, by seeking:

**<u>Plaintiff's First FOIA Request</u>**
**By Way of Chronological Background**
**Pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552a**

    (i)    A copy of any records showing or confirming when Dr. Raymond E. Turek began his employment with the Nashville Department of Veterans Affairs as a Medical Rating Specialist,

    (ii)    To determine if Dr. Turek was still an active employee of the Department of Veterans Affairs, and

    (iii)    To provide plaintiff with a copy of the VA announcement for Dr. Turek's Medical Rating Specialist position with Nashville VARO at inception of his initial employment with VARO.

(See plaintiff's FOIA/P.A. request to Nashville VARO on 12/17/21 at 10:29 a.m. (est) attached hereto as Plaintiff's **Exhibit G**).
3

32.) Employee Privacy Interests. Pursuant to 5 CFR § 293.311, certain information related to federal employees, not involved in law enforcement is publicly releasable even when contained in a Privacy Act system of records. These items include: name, past and present position titles and occupational series, present and past grades, present and past annual salary rates (including performance awards and bonuses, incentive awards, merit pay amount, meritorious or distinguished executive ranks and allowances and differentials), present and past duty stations (including room numbers, shop designations or other identifying information regarding buildings or places of employment) and position descriptions, identification of job elements and those performance standards, but not actual performance appraisals, when the release would not interfere with law enforcement programs or severely inhibit agency effectiveness. VHA component FOIA Officers must understand that the regulation cited in this paragraph does not constitute an exhaustive listing of information that may be publicly disclosed pursuant to a FOIA request.

(See VHA Directive 1935, p.57, February 5, 2018, attached hereto as Plaintiff's **Exhibit H**).

33.) The information requested above by plaintiff does not seek any 'personal' or 'sensitive' information concerning Dr. Raymond E. Turek that would preclude access under FOIA or the Privacy Act of 1974.

34.) By email dated Friday, January 14, 2022, plaintiff provided Mr. Kraft with copies of Dr. Turek's Tennessee Department of Health 1984 license revocation and District Court of Tennessee' Criminal conviction in 2004 for two

14

separate felonies. The criminal court record shows Dr. Turek is in receipt of monthly veterans benefits and defendant would therefore have the requested information in its 'VA System of Records' without unnecessarily impeding upon the strict timelines the constitutional process demands and infringing upon indispensible judiciary time and expenses. To date, Mr. Kraft failed to respond directly to plaintiff.

### Telephone Call from Tony L. Hoover, (VA FOIA Officer) Regional Office, Nashville

35.) On Friday, January 14, 2022, plaintiff received a telephone call from Tony L. Hoover who identified himself as the FOIA Officer for VARO Nashville.

36.) During plaintiff's brief telephone call with Mr. Hoover, plaintiff asked him if he was aware of Dr. Turek's fraud and revocation record identified by the Tennessee Department of Health and District Court in Middle District. Mr. Hoover replied that he was unaware of these actions and any information regarding this matter was prohibited by the Privacy Act of 1974.

37.) Then, Mr. Hoover told plaintiff that his FOIA request was confusing, it did not make sense, and he did not understand any of it.

38.) Plaintiff attempted to ask Mr. Hoover if he could identify with specifics what part of the request was unclear. Mr. Hoover **"laughed"** at plaintiff and refused to respond.

39.)   Next, Mr. Hoover told plaintiff that his FOIA and Privacy Act request will have to be submitted to the Office of Personnel Management ("OPM").

40.)   Plaintiff asked Mr. Hoover when the Nashville Department of Veterans Affairs Regional Office modified its policy in transmitting all FOIA and/or Privacy Act requests to the OPM for action.  Again, Mr. Hoover refused to respond.  Hoover became curt and short.

41.)   Then, Plaintiff asked Mr. Hoover to provide him with a moment so he could obtain a copy of the December 17, 2021 FOIA/P.A. request for the purpose of working through any issues or concerns he may of shared.  After about 20 seconds plaintiff located the request and before he was able to articulate any references or points in the request, Mr. However abruptly said, **"I gotta go"** and **hung up the telephone**.  The duration of the telephone call consisted of five 5-7 minutes, at best.

42.)   Even assuming Mr. Hoover's telephone was in good faith, which plaintiff argues it was not, then defendant must explain to this Court why Mr. Hoover laughed at plaintiff, became curt, and would not allow plaintiff 20 seconds to locate the FOIA request which was supposedly the nature of Mr. Hoover's telephone inquiry so the parties could foster constructive dialogue and cordially engage in working through legitimate issues and concerns Mr. Hoover had.  After consideration of this matter plaintiff believes defendants management agent, Tony

Hoover, appears to have been attempting to dissuade plaintiff from proceeding forward with his FOIA and Privacy Act Requests, which now raises other legitimate questions, concerns and other potential violations under the Act.

43.)   By email to Travis E. Kraft, Assistant Director of Nashville VARO, on January 14, 2022, at 3:30 p.m. (est), plaintiff asked Mr. Kraft and others whether Mr. Hoover's conduct was consistent with policy and procedure set forth at 38 C.F.R. § 0.60, Subpart A.   This section describes Core Values, Characteristics, and Customer Experience Principles that serve as internal guidelines for employees of the VA. These core values define VA employees, articulate what VA stands for, and underscore its moral obligation to veterans, their families, and beneficiaries.   To date, Mr. Kraft failed to respond to plaintiff.

### Voice Message from Barbara L. Kehoe, VA Office of Regional Counsel for Southeast District

44.)   During the late afternoon of January 14, 2022, plaintiff received a voice message from Barbara L. Kehoe, VA Office of Regional Counsel, St. Petersburg, Florida, requesting plaintiff to contact her.

45.)   During the morning of January 18, 2022, plaintiff contacted Attorney Kehoe by telephone.   The parties spoke for approximate thirty (30) minutes.

46.)   By email dated January 18, 2022, at 3:04 p.m. (est), plaintiff provided Attorney Kehoe with a written summary of their cordial discussion (See plaintiff's email to Attorney Kehoe attached hereto as Plaintiff's **Exhibit I**).

47.)   By email dated January 18, 2022, Barbara L Kehoe, VA Regional

Counsel, stated (excerpt):

> Thank you for speaking with me this morning. As we discussed, my email
> includes the weblinks and addresses to obtain the records for a previous VA
> employee (below). I spoke with Nashville VARO AD Travis Kraft and
> explained what information you are requesting and your questions.
>
> Unfortunately, I do not have much information on Dr. Turek. According to
> Mr. Kraft, he is unaware of anyone who worked directly with or has with
> first-hand knowledge of Dr. Turek's employment at the VA. He believes
> Dr. Turek left the VA prior to his conviction (in the early 2000's). The
> information as to his employment will be in his records at the Archives. Mr.
> Kraft is unaware of any other allegations that Dr. Turek mishandled
> adjudication of veteran claims. However, he acknowledged those claims
> would have been handled by OIG and investigated prior to Mr. Kraft's
> appointment as VARO-AD.
>
> Mr. Kraft understands your concerns with Dr. Turek's involvement in your
> claim. Since it has been a number of years since Dr. Turek reviewed the
> case, there are several options available for re-evaluation of your
> claim. Without any additional information, Mr. Kraft believes a request for
> reopening your claim would be the best option. He is happy to have
> someone from the VARO contact you to discuss your options and how to
> request reevaluation.

(See Barbara Kehoe's complete email to Attorney Kehoe attached hereto as
Plaintiff's **Exhibit J**).

48.)   By email dated January 19, 2022, Barbara L Kehoe, VA Regional

Counsel, stated (excerpt):

> Mr. Mulvey:
>
> Please be aware that my email was not sworn testimony or an official
> response to your FOIA. I am not the FOIA officer for the VARO. Instead,
> it was my attempt to assist you in obtaining the information you requested as
> well as explaining why the Nashville RO could not provide it. I do not want

my explanation to be construed as some type of discovery response or official OGC statement. I am unsure why there are certain words underlined as I did not underline the original text.

To confirm - Travis Kraft does not have knowledge of the date Dr. Turek's employment ended with the Nashville Regional Office, as he was not employed by the regional office at that time. Mr. Kraft does not have knowledge of any allegations in regard to Dr. Turek's involvement with Veterans' claims during his time employed by the Nashville Regional Office. Additionally, Mr. Kraft is not aware of any OIG investigations involving Dr. Turek.

49.) Plaintiff asserts that Attorney Kehoe's emails on January 18-19, 2022, to plaintiff poses remarkable conflict and raises questions regarding Travis Kraft's (1) knowledge concerning Dr. Turek, and (2) whether Mr. Kraft was employed by the Nashville Department of Veterans Affairs during Dr. Turek's recent felony investigations by multiple federal agencies: FBI, U. S. Postal Service, VAOIG, and Tennessee Bureau of Investigation, to name a few. Ms. Kehoe asserted that Mr. Kraft was not employed by the VA during this time. The assertions by Kehoe and Kraft appear to be disingenuous because official court records confirm that Mr. Kraft was employed by the Nashville Department of Veterans Affair in or around 1999, evidenced by his own official court testimony under Oath in another matter. Plaintiff is unclear, at least at this point, why and for what purpose defendant's senior Nashville management employee, an Assistant Director, especially after conferring with his Office of Regional Counsel would knowingly represent misleading and/or inaccurate information to plaintiff through agency counsel.

50.)    Nonetheless, these particular set of facts fit the hallmarks of deceitful conduct because defendant and his employees had adequate and sufficient time to cure any possible defects (i.e., error, mistake or confusion), but simply chose not to take any action or offer any justification or explanation in this matter.

### Telephone Call with Nashville VA Coach—Mr. Wilson

51.)    On January 28, 2022, VA Coach Wilson, a management employee of the Nashville Regional Office contacted plaintiff to discuss questions concerning a September 24, 1991 VARO Rating Decision which was confirmed on October 15, 1991. ("This is the rating decision Dr. Turek evaluated for plaintiff").

52.)    During the telephone call, Mr. Wilson mentioned his employment with Nashville VARO began in 2008. Mr. Wilson also confirmed that he recalled having conversations with his colleagues regarding Dr. Turek in the past. Mr. Wilson works under the direction or control of Travis E. Kraft. And, District of Tennessee Court records confirm Mr. Kraft has been employed by Defendant Department of Veterans Affairs Regional Office since approximately 1999.

53.)    Mr. Wilson advised plaintiff that he could file a "subsequent claim" for benefits. However, Mr. Kraft, Assistant Director, earlier advised plaintiff could "reopen" his claim.

54.)   Mr. Wilson stated the only way a veteran could receive an earlier effective date back to 1986 or 1991 was to file a claim for "Clear and Unmistakable Error" a/k/a CUE.

55.)   Mr. Wilson asserted plaintiff's prior claim in 1991 was proper, but he would not respond to questions concerning Dr. Turek's known illegal activities which are a matter of public record.

56.)   Mr. Wilson further acknowledged and conceded the Department of Veterans Affairs Nashville Regional Office misapplied the incorrect law to plaintiff's case.

57.)   Plaintiff asked Mr. Wilson whether plaintiff's 1991 claim was a "reopened" claim or a "new" claim.  Mr. Wilson was unable to adequately or sufficiently respond to the question.

58.)   Mr. Wilson conceded to plaintiff that the Nashville Department of Veterans Affairs Regional Office erroneously stated plaintiff's incorrect Social Security Number on the 1991 Rating decision, pp.'s 2 and 3.

Plaintiff's Request for Official Response from the Nashville VA

59.)   On February 2, 2022, plaintiff requested Dene Davis, Esq./VA Nashville Service Manager to confirm the Department of Veterans Affairs Regional Office misapplied the wrong law to plaintiff's 1991 rating decision.  To date, Ms. Davis also refuses to respond.

**Plaintiff's Second Request**

**Pursuant to 5 U.S.C. § 552 and 5 U.S.C. § 552a**

60.)   On January 10, 2022, by operation of facsimile and successful confirmation receipt, and by operation of the United Parcel Service ("UPS"), Tracking No. 1ZA817V90351015060, received by Erica at the Nashville VARO, 110 9th Avenue South, Nashville, Tennessee on January 13, 2022, at 10:47 a.m., plaintiff requested "all information" between September 1986 to present identifying plaintiff's name contained in their system of records, including but not limited to: all documents, records, information, files, reports, papers, memorandums, notes and materials. (See FOIA request attached hereto as Plaintiff's **Exhibit K**).

61.)   To date, defendant has failed to reasonably and timely comply with the requirements set forth in 5 U.S.C. § 552 and 5 U.S.C. § 552a.

62.)   On January 14, 2022, Tony L. Hoover, FOIA Officer for defendant's Nashville Regional office, knowingly transmitted an electronic message to the Office of Personnel Management ("OPM") seeking assistance from another federal agency.  In his email, Mr. Hoover told OPM, that

> **"we received a FOIA request from a former employee that previously worked at the Nashville Regional Office and he is requesting his employment records.  Any assistance you can provide for this former employee will be greatly appreciated."**

22

.

(See Tony Hoover Email to OPM dated 1/14/22, attached hereto as Plaintiff's **Exhibit L**).

63.)   On January 31, 2022, at 4:15 p.m., plaintiff received an email from the Office of Personnel Management stating,

> **"Per the below, the VA's Regional Office in Nashville attempted to forward to the U.S. Office of Personnel Management a FOIA request you would have submitted seeking your employment records..."**

64.)   Defendant's agent, Tony Hoover, misrepresented factual information and sought assistance from another federal agency knowing the information was false on its face.

65.)   Since January 14, 2022, Mr. Hoover nor any employee on behalf of Defendant Department of Veterans Affairs acknowledge[ed] or confirm[ed] this particular incident was or could have been the result of (i.e., confusion, error, mistake or faulty memory).   Assuming this was an inadvertent error, mistake or confusion, defendant had adequate and sufficient opportunity to cure any known or such defects, but again, chose to do nothing at all.

66.)   This type of conduct could potentially lead any trier of fact-finder to reasonably infer that Mr. Hoover's intentions were/are inconsistent with prescribed rules, policies, practices, and procedures of the Department of Veterans Affairs, Freedom of Information Act and the Privacy Act of 1974.

67.)   Plaintiff has made several diligent efforts to communicate with the Office of Personnel Management regarding these matters.  To date, OPM has not responded.

## VIII.   ADMINISTRATIVE EXHAUSTION

### A.   Failure to Comply with Deadlines

68.)   As a prerequisite to instituting underlying claims pursuant to the FOIA and Privacy Act, plaintiff must exhaust his administrative remedies with defendant before seeking judicial redress in federal district court.  However, when defendant fails to adhere to strict statutory timelines and deadlines, then plaintiff is deemed by statute to have fulfilled the exhaustion requirement. 5 U.S.C. § 552(a)(6)(C)(i); Coleman v. DEA, 714 F.3d 816 (4th Cir. 2013); Judicial Watch v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003).

### B.   Triggering Administrative Exhaustion

69.)   To trigger the exhaustion requirement, defendant must make and communicate its determination to a requester whether to comply with a Freedom of Information Act, and communicate the reasons therefor, within twenty (20) working days of receiving the request, or within thirty (30) working days in "unusual circumstances."  5 U.S.C.S. § 552(a)(6)(A)(i) and (a)(6)B)(i).

70.)   If defendant does not make or communicate his intention within the prescribed of time for doing so, plaintiff may bring suit directly in federal district

24

court 'without' exhausting his administrative appeal remedies before the agency. Citizens for Responsibility & Ethics in Wash. v. FEC. 711 F.3d 180, 188 (D.C. Cir. 2013); Shapiro v. SSA, 525 F.Supp.3d 528 (Dist. Ct. 2021).

71.)   Defendant, a federal government agency must respond to a FOIA appeal within twenty (20) working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial. 5 U.S.C. § 552a(6)(A)(ii).

72.)   In "unusual circumstances," a federal government agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide the date on which a determination is expected to be dispatched.  5 U.S.C. § 552a(6)(B).

73.)   Upon receipt of a complaint, a district court confers jurisdiction to enjoin the agency from withholding agency records and order the production of agency records improperly withheld from plaintiff.  5 U.S.C. § 552a(4)(F).

74.)   The FOIA further provides a mechanism for disciplinary action against officials who have acted inappropriately, impeded or obstructed the withholding of records. More specifically, when requiring the release of improperly withheld records, if this Court after evaluation makes a written finding that the circumstances surrounding the withholding of records raise plausible

questions that agency personnel acted arbitrarily or capriciously, a disciplinary investigation is triggered. 5 U.S.C. § 552(a)(4)(F).

Plaintiff's Request for Order Seeking Limited Discovery

75.)   When viewed in totality, and when the Court considers defendant's 'pattern of practice' of interfering with plaintiff's rights under the regulations and Acts, including but not limited to conduct of (a) Mr. Kraft's conflicting representations to plaintiff via regional counsel, (b) VA Coach's Wilson's representation who recalls having past conversation about Dr. Turek with his colleagues—contrary to Mr. Kraft's assertions and more, (c) Mr. Hoover's misrepresentations to another federal agency, and (d) Dr. Turek employed by the defendant for many years with a checkered past involving healthcare fraud and money laundering felony convictions and licensure revocation, and (e) the substantial error of law and facts incorrectly evidenced in plaintiff's 1991 rating decision evaluated by Dr. Turek, a Court may act Sua Sponte and take appropriate measures as necessary.

76.)   Plaintiff respectfully seeks an appropriate Order from this Court allowing him to perform "limited discovery" pursuant to local and federal rules of civil procedure involving these matters.

77.)   Plaintiff respectfully asks this Court to consider not providing defendant with much, if any, weight or credibility in defendant's subsequent

declarations or affidavits submitted to the Court for consideration, particularly in view of defendant's overall conduct and behavior established by the facts thus far.

## CAUSES OF ACTION
### COUNT I
### FREEDOM OF INFORMATION ACT
### 5 U.S.C. 552

78.) Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-82 above, as if fully set forth herein.

79.) It is a violation of the Freedom of Information Act ("FOIA'), for a federal agency's failure to respond to a party making a FOIA request within 20 working days—excluding legal holidays and weekends, notifying the party of at least the agency's determination whether or not to fulfill the request, and the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. § 552a(6)(A)(i).

80.) Defendant received plaintiff's FOIA request on January 10, 2022, which was transmitted successfully by facsimile to defendant in Nashville, Tennessee. A fax confirmation receipt is attached hereto. Defendant failed to respond in writing to plaintiff on or before February 8, 2022, and therefore continues to be in default.

81.)   As a direct and proximate result of defendant's actions, plaintiff suffered and continues to suffer prejudice and harm by defendant's refusal to promptly disclose relevant and material documents in his custody, control or possession. Defendant is in denial, aware of his errors of law and fact in plaintiff's 1991 rating decision evaluated by a "dishonest physician." However, this veteran is not the only person prejudiced and harmed by Dr. Turek's shoddy evaluation. In fact, many veterans across this country may now come forward to defendant seeking potential reconsideration of their respective claims to ascertain whether they were potentially subjected to similar treatment the plaintiff sustained by defendant and Dr. Turek.   This particular matter outweighs any argument defendant may evince to dismiss plaintiff's complaint.  However, the Court need not look to far to discern the egregious nature, conduct and practices by defendant—it's a matter of official record and supported by facts herein whereas defendant purposely kept a lid on this matter for years depriving dozens of veterans with defendant's questionable values set forth at 38 C.F.R. § 0.601, addressing:

- Core Values
- Integrity
- Commitment
- Advocacy
- Respect, and
- Excellence

82.)   Plaintiff has improperly lost tens of thousands of dollars in lost compensation benefits and interest over the past thirty one (31) years, in addition to time, cost and fees, and more, in preparing this regrettably voluminous complaint.   Plaintiff is entitled to relief compelling defendant to produce all responsive records as this Court deems fair, appropriate, and for all such other relief as the Court deems equitable and just.

**COUNT II**

**PRIVACY ACT OF 1974**
**5 U.S.C. § 552A**

83.)   Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-86 above, as if fully set forth herein.

84.)   The Privacy Act provides a civil action when an agency discloses "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(d)(3)(D); 5 U.S.C. § 552a(b).

85.)   If the agency acted in an intentional or willful manner in violation of either 5 U.S.C. § 552a(d)(3)(D), plaintiff is entitled to actual damages sustained by defendant as a result of the refusal or failure . .  and costs of this action with reasonable fees as determined appropriate by the court. 5 U.S.C. § 552a(d)(4).

86.)   It is a violation of the Privacy Act of 1974, for a federal agency to delay, hamper or impede the release and/or disclosure of the undersigned disabled veteran seeking reasonably prompt disclosure of his own claim records, documents and materials in the custody, control or possession of the Nashville Department of Veterans Affairs Regional office.

87.)   The Privacy Act, 5 U.S.C. § 552a(d), grants an individual the right to review, make a copy of his record or obtain a copy of his record or any information pertaining to information contained in Defendant's System. 5 U.S.C. § 552a(d)(1).

88.)   Pursuant to 5 U.S.C. § 552a(d)(3)(A), this Court may order appropriate relief including injunctive relief against any action by an officer of the United States or any agency thereof, or mandamus to compel a federal officer or employee to perform a duty required by the Privacy Act.

89.)   Plaintiff is entitled to injunctive relief compelling defendant to properly amend the record by acknowledging his (a) "Clear and Unmistakable Errors" of law and fact contained in the September 24, 1991 Rating Decision, (b) compelling defendant's management employee, Tony L. Hoover, to formally retract his misrepresentation, (i.e., statement to the Office of Personnel Management on January 14, 2022), and (c) compelling defendant to produce the requested records as this Court deems appropriate and for such other relief as the Court deems equitable and just.

90.)   As a direct and proximate result of defendant's actions, plaintiff has suffered physical and mental harm because defendant has falsely portrayed plaintiff to another federal agency as a "former employee" of the Department of Veterans Affairs, which is untrue. Defendant is also aware of plaintiff's medical conditions by virtue of direct access to his electronic file (i.e., blepharospasms, skin condition, anxiety, migraines, and PTSD), to name a few, in addition to further harms including cost, fees and other losses in proceeding with this matter.

**COUNT III**
**PRIVACY ACT OF 1974**
**5 U.S.C. § 552A**

91.)   Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1-91 above, as if fully set forth herein.

92.)   The Privacy Act provides a civil action when an agency discloses "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(d)(3)(D); 5 U.S.C. § 552a(b).

93.)   If the agency acted in an intentional or willful manner in violation of either 5 U.S.C. § 552a(d)(3)(D), the individual is entitled to the sum of "actual damages sustained by the individual as a result of the refusal or failure . . . and the costs of the action together with reasonable attorney fees as determined by the

court" 5 U.S.C. § 552a(d)(4).

94.) On January 14, 2022, Tony L. Hoover, a manager/coach for the Nashville Department of Veterans Affairs, knowingly violated plaintiff's rights in violation of 5 U.S.C. § 552a(b), which states in relevant part: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record."

95.) Mr. Hoover did not have any legitimate or plausible basis to transmit plaintiff's FOIA request to OPM on January 14, 2022 because plaintiff was not a former VA employee seeking employment records nor was he a former employee of the VA as described to OPM by Mr. Hoover. Mr. Hoover is a manager and coach for defendant.

96.) The Act provides a mechanism for disciplinary action against officials who have acted inappropriately in withholding records. Specifically, when requiring release of improperly withheld records, if this Court makes a written finding that the "circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered.5 U.S.C.§ 552(a)(4)(F).

97.)    As a direct and proximate result of defendant's actions, plaintiff has suffered physical and mental harm because defendant has falsely portrayed plaintiff in a negative and unfavorable light to another federal agency without any basis for doing so under rule and regulation. Plaintiff was never a paid employee at any time for the Department of Veterans Affairs and to assert otherwise is untrue. Defendant is also aware of plaintiff's medical conditions by virtue of direct access to his electronic file (i.e., blepharospasms, skin condition, anxiety, migraines, and PTSD), to name a few, in addition to further harms including cost, fees and other losses in proceeding with this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, *premises considers*, Plaintiff respectfully requests the Court to issue judgment against Defendants, jointly and/or severally, as follows:

1.)    An Order compelling prompt disclosure of all responsive records sought by Plaintiff on January 10, 2022,

2.)    A Declaratory Order from this Court showing Defendant violated the statutory provisions of 5 U.S.C. § 552 and 5 U.S.C. § 552a and its own regulations set forth under Title 38 by improperly withholding documents and failing to timely and reasonably disclose such documents consistent with the prescribed and strict time period set forth in the Act. (See 38 C.F.R. § 1.557(c)).

3.)    A Declaratory Order from this Court showing Defendant violated its regulations by refusing to provide plaintiff with an assigned FOIA Tracking Number upon receipt of his FOIA request. (See 38 C.F.R. § 1.557(a)).

4.)    Injunctive relief under the Privacy Act requiring Defendant to amend and/or correct the records referenced in this action including but not limited to:

(i.)    September 24, 1991 Rating Decision improperly citing and applying the law—the regulation misapplied by defendant is 38 CRF § 3.24,

(ii.)    September 24, 1991 Rating Decision citing incorrect Social Security Claim Numbers—wrongfully identifying plaintiff,

(iii.)    The September 24, 1991 Rating decision erroneously stating plaintiff  "reopened" his claim for "fractured jaw and hearing loss on July 11, 1991, Section D, p. 2, and

(iv.)    That Plaintiff filed his claims for hearing loss and fractured mandibular with Defendant on July 11, 1991, as stamped 'filed' by the Nashville Department of Veterans Affairs—not July 10, 1991, as continually and wrongfully asserted by Defendant without any factual or legal basis for doing so.

5.)    An Order requiring Defendant to provide Plaintiff with a Vaughn Index specifying the nature and degree in detail of documents it seeks to withhold from the originating agency and the exemptions Defendant intends to assert,

6.)    An Order from this Court permitting Plaintiff to conduct and engage in limited discovery within strict compliance of the Federal and Local Rules of Civil Procedure for the Eastern District,

7.)    An appropriate award of fees and filing cost as provided by statute, common law right or otherwise, and special damages, including liquidated damages, in appropriate amounts to be established before this Honorable Court, as required under the Privacy Act,

8.)    Any further declaratory or injunctive relief as the Court may deem appropriate and just; and

9.)    Any such other and further relief as the Court may deem appropriate, equitable and just.

**Date:** February 17, 2022                         Respectfully submitted,


                                        By: JOHN ALBERT MULVEY
                                            ("Appearing Pro Se")
                                            536 West Riverview Drive
                                            Suffolk, Virginia 23434
cc: PSM/by                                  Telephone: (615) 557-7601

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, plaintiff hereby certifies the facts, exhibits and accompanied declaration arising out of the undersigned's aforementioned Freedom of Information Act, 5 U.S.C. § 552 and Privacy Act of 1974, 5 U.S.C. § 552a Complaint, seeking prompt disclosure of information, documents, and materials, and all such other relief by the Court, is true and correct to the best of Plaintiff's information, knowledge and belief.

**DATE:** February 17, 2022

By: _____
John Albert Mulvey

## CERTIFICATE OF SERVICE

The undersigned plaintiff hereby certifies that a true and exact copy of the foregoing Freedom of Information Act and Privacy Act of 1974 Complaint, accompanied by Exhibits and Declaration was served by operation of the United States Postal Service, certified delivery, on the 17th day of February 2022, to:

### VIA CERTIFIED MAIL

MERRICK B. GARLAND
United States Attorney General
Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Office of United States Attorney
Department of Justice
**Attn**: Civil Filing Docket Clerk
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

DENIS R. MCDONOUGH
Secretary
Department of Veterans Affairs
810 Vermont Avenue
Washington, D.C. 20420

Department of Veterans Affairs
**Attn:** Civil Filing Docket Clerk
810 Vermont Avenue, N.W.
Washington, D.C. 20420

(w/attachments to each above)

*Courtesy Copy to*:

Mr. Tony Hoover
FOIA Officer/Coach/Public Contact
Department of Veterans Affairs
Regional Office
110 9th Avenue South
Nashville, Tennessee 37203

(w/o attachments)

By: JOHN ALBERT MULVEY
(Appearing Pro Se)
536 West Riverview Drive
Suffolk, Virginia 23434
Telephone: (615) 557-7601
Facsimile: (757) 210-3819
Email: jam5813@gmail.com